1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
9                    AT TACOMA

10

11   ORION INSURANCE GROUP, a              CASE NO. 16-5582 RJB
     Washington Corporation; RALPH G.
     TAYLOR, an individual,                ORDER ON CROSS MOTIONS
12                                         FOR SUMMARY JUDGMENT
                        Plaintiffs,
13
14            v.

15   WASHINGTON STATE OFFICE OF
     MINORITY & WOMEN'S BUSINESS
16   ENTERPRISES; EDWINA MARTIN-
     ARNOLD; DEBBIE MCVICKER;
     PAMELA SMITH; SARAH
17   ERDMANN; STACEY SAUNDERS,
     individuals, and UNITED STATES
18   DEPARTMENT OF
     TRANSPORTATION, and LESLIE
19   PROLL, an individual,

20                      Defendants.

21
          This matter comes before the Court on the Plaintiffs' Motion for Partial Summary
22
     Judgment on Liability for Certain Causes of Action (Dkt. 48), the Federal Defendants' Motion
23
     for Summary Judgment on Administrative Procedure Act ("APA"), Equal Protection, and Void
24

1  for Vagueness Claims (Dkt. 54), and the State Defendants' Cross Motion for Summary Judgment

2  (Dkt. 58).  The Court has considered the pleadings filed in support of and in opposition to the

3  motions, including the supplemental briefing (Dkts. 76, 78 and 79), and the file herein.

4          Plaintiffs, Orion Insurance Group ("Orion"), a Washington corporation, and its owner,

5  Ralph Taylor, filed this case alleging violations of federal and state law due to the denial of their

6  application for Orion to be considered a disadvantaged business enterprise ("DBE") under

7  federal law.  Dkt. 1.  Plaintiffs now move the Court for an order that summarily declares that the

8  Defendants violated the APA, declares that the denial of the DBE certification for Orion was

9  unlawful, and reverses the decision that Orion is not a DBE.  Dkt. 48.  The United States

10 Department of Transportation ("USDOT") and Leslie Proll, the Acting Director of USDOT,

11 (collectively the "Federal Defendants") move for a summary dismissal of all the claims asserted

12 against them.  Dkt. 54.  The Washington State Office of Minority & Women's Business

13 Enterprises ("OMWBE"), Edwina Martin-Arnold, Debbie McVicker, Pamela Smith, Sarah

14 Erdmann, and Stacey Saunders (collectively the "State Defendants") move for summary

15 dismissal of all claims asserted against them.  Dkt. 58.   For the reasons provided herein,

16 Plaintiffs' motion for partial summary judgment (Dkt. 48) should be denied, in part, and stricken,

17 in part, the Federal Defendants' motion for summary judgment (Dkt. 54) should be granted, and

18 the State Defendants' motion for summary judgment (Dkt. 58) should be granted, in part, and

19 stricken, in part.

20              I.      **BACKGOUND FACTS AND PENDING MOTIONS**

21       **A.  FEDERAL DBE PROGRAM**

22          The federal DBE program, established in the early 1980s, sets a goal of not less than ten

23 percent of federal funds authorized to be spent on highway and transit programs be expended

24

through "small business concerns that are owned and controlled by socially and economically disadvantaged individuals." Surface Transportation Assistance Act, Pub. L. No. 97-424, 96 Stat. 2097 (1983); Moving Ahead for Progress in the 21st Century Act, Pub. L. No. 112–141, § 1101(b), 126 Stat. 405, 414–16 (2012); in its most recent form, Fixing America's Surface Transportation Act, Pub. L. No. 114-94, § 1101, 129 Stat. 1312 (2015). "Socially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias within American society because of their identities as members of groups and without regard to their individual qualities. Social disadvantage must stem from circumstances beyond their control." 49 C.F.R. § Pt. 26, App. E. Further, "[e]conomically disadvantaged individuals are socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same or similar line of business who are not socially disadvantaged." *Id.* In passing the current relevant reauthorizing legislation and the prior statutes, Congress considered and documented discriminatory hurdles faced by women and racial minorities in being awarded federally funded transportation contracts. *Id.,* and *Western States Paving Co. v. Washington State Department of Transportation*, 407 F.3d 983 (9th Cir. 2005). Those hurdles include: discrimination by trade unions and financial institutions in gaining capital to begin a business; and even after a business is started, discrimination by "prime contractors, business networks, suppliers and bonding companies." *Id.* Under the DBE, women and racial minorities are presumed to be "socially and economically disadvantaged." 49 C.F.R. 26.67 (a)(1). The presumption that an individual is in a disadvantaged group, and/or is socially or economically disadvantaged, can be rebutted. *Id.*; 26 C.F.R. 26.63.

1    The current and former statutes that created the program do "not establish a uniform

2    national affirmative action program. Each state that receives federal funds must implement a

3    preference program that complies with federal regulations." *Associated Gen. Contractors of*

4    *Am., San Diego Chapter, Inc. v. California Dep't of Transp*., 713 F.3d 1187, 1190 (9th Cir.

5    2013).  Under the regulations, recipients of federal funds (here the State of Washington) may

6    certify firms as eligible to participate as DBEs in accord with the federal regulations.  49 C.F.R.

7    §§ 26.61 and 26.5.  The state may also maintain its own program, as Washington does.  If a

8    firm's DBE certification application is denied, the applicant may appeal to the USDOT, where it

9    is directed to the Office of Civil Rights.  49 C.F.R. 26.89(a) and (d).

10    **B.  WASHINGTON'S MINORITY BUSINESS ENTERPRISE PROGRAM**

11    Washington has a program in which qualifying individuals or businesses can obtain a

12    certification that they are a minority business enterprise ("MBE") under the state regulations.

13    OMWBE is charged with reviewing and making determinations for the state program using the

14    applicable Washington Administrative Code ("WAC").  WAC 326-20-010, *et seq*.  Under the

15    state program:

16    The [OMWBE] presumes that citizens of the United States or lawfully admitted
       permanent residents who are women, African Americans, Hispanic Americans,
17    Native Americans, Asian-Pacific Americans, Subcontinent Asian Americans, or
       other minorities found to be disadvantaged by the program, are socially and
18    economically disadvantaged individuals. Applicants are required to submit a
       signed, notarized certification that each disadvantaged owner is, in fact, socially
19    and economically disadvantaged.

20    WAC 326-20-048.  Unlike in the federal DBE certification process, Washington law does not

21    provide that the presumption (that women and the listed racial minorities are "socially and

22    economically disadvantaged individuals") is rebuttable.

23    **C.  PLAINTIFF TAYLOR LEARNS OF HIS RACIAL HERITAGE**

24

1    On August 25, 2010, Plaintiff Ralph Taylor received results from a genetic ancestry test

2  that estimated that he was 90% European, 6% Indigenous American, and 4% Sub-Saharan

3  African. Dkt. 50-1, at 27. The test has an error rate of 3.3%. Dkt. 50-1, at 55.

4    Mr. Taylor acknowledges that he grew up thinking of himself as Caucasian, but asserts

5  that in his late 40s, when he realized he had Black ancestry, he "embraced his Black culture."

6  Dkt. 59-2, at 8.

7    **D. PLAINTIFFS APPLY FOR STATE MBE CERTIFICATION**

8    On April 19, 2013, Mr. Taylor submitted an application to OMWBE, seeking to have

9  Orion, his insurance business, certified as a MBE under Washington State law. Dkt. 50-1, at 31.

10  In the application, Mr. Taylor identified himself as Black, but not Native American. *Id.* His

11  application was initially rejected (Dkt. 50-1, at 31), but after Mr. Taylor appealed the decision

12  (Dkt. 49, at 2), OMWBE voluntarily reversed their decision and certified Orion as an MBE under

13  the Washington Administrative Code and other Washington law (Dkt. 50-1, at 36).

14    **E. PLAINTIFFS APPLY FOR FEDERAL DBE CERTIFICATION**

15    On March 31, 2014, Plaintiffs submitted, to OMWBE, Orion's application for DBE

16  certification under federal law. Dkt. 50-1, at 76. His application indicated that Mr. Taylor has

17  owned Orion since 1995. Dkt. 50-1, at 76. Orion's gross receipts for the year 2013 were

18  $1,083,204; for the year 2012 were $902,191; and for the year 2011 were $878,044. Dkt. 50-1, at

19  77. Orion has 15 employees. Dkt. 59-2, at 121. Orion had two loans outstanding at the time:

20  one for $250,000 (the balance remaining was estimated at $58,000) and one for $75,000 (with an

21  estimated remaining balance of $18,000). Dkt. 50-1, at 81. Mr. Taylor has a Bachelor of Arts

22  degree from Washington State University (Dkt. 59-2, at 121) and a license to sell insurance (Dkt.

23  50-1, at 81). Mr. Taylor identified himself as Black American and Native American in the

24

Affidavit of Certification submitted with the federal application. Dkt. 50-1, at 83. Considered

with his initial submittal were the results from the August 25, 2010 genetic ancestry test that

estimated that he was 90% European, 6% Indigenous American, and 4% Sub-Saharan African

(Dkt. 50-1, at 27), a copy of his Washington State driver's license, which includes his picture

(Dkt. 59-1, at 2), his birth certificate which did not state his ethnicity (although his parents are

listed as Caucasian)(Dkt. 59-2, at 9), and a February 9, 2011 letter from Mr. Taylor's father to an

unknown entity requesting that Mr. Taylor's birth certificate be changed to reflect that he is

"Caucasian, African, and American Indian" (Dkt. 50-1, at 29). Mr. Taylor submitted the results

of his father's genetic results, dated March 18, 2011, which estimated that he was 44%

European, 44% Sub-Saharan African, and 12% East Asian. Dkt. 50-1. Mr. Taylor included a

1916 death certificate for a woman from Virginia, Eliza Ray, identified as a "Negro," who was

around 86 years old (50-1, at 62), with no other supporting documentation to indicate she was an

ancestor of Mr. Taylor.

On May 16, 2014, OMWBE notified Mr. Taylor, that pursuant to 49 C.F.R. § 26.63, it

was questioning whether he was a member of the Black American or Native American groups,

and explained why it was questioning his membership. Dkt. 50-1, at 70-74. OMWBE requested

that Mr. Taylor provide an additional narrative and further documentation of his membership in

either or both racial groups, that he held himself out as a member of either racial group, or is

considered, by the relevant community, to be a member of either racial group over a long period

of time prior to his application. Dkt. 50-1, at 70-74. OMWBE further asked for any "additional

narrative and/or documentation regarding how [he], as an individual, [was] socially and

economically disadvantaged." *Id*. Mr. Taylor was also asked to submit a form entitled "Personal

Financial Statement." Dkt. 50-1, at 70. This "Personal Financial Statement" is not in the record.

On May 27, 2014, Mr. Taylor responded to the request by letter. Dkt. 50-1, at 55-60. He attempted to explain the differences in his DNA test results and his father's DNA test results. Dkt. 50-1, at 55-57. He asserted that, based on family names and a timeline he constructed, an "inference can be made" that the Virginia woman was related to him on his mother's side. Dkt. 50-1, at 57-58. (He discusses Ulysses S. Grant and the U.S. military's campaign of burning important buildings at the end of civil war and implies that could have caused his failure to have documents showing his relationship to this Virginia woman.) Dkt. 50-1, at 58. Mr. Taylor also pointed to a birth certificate for a paternal relative, born in 1914, whose father's race is listed as "white?" (Dkt. 50-1, at 61). Dkt. 50-1, at 60. He acknowledged that he had no documentation regarding his membership in the Native American racial group. Dkt. 50-1, at 59. Mr. Taylor stated that he considered himself to be Black based on his DNA test results, that he joined the NAACP, subscribed to Ebony magazine, and has "taken a great interest in Black social causes." Dkt. 50-1, at 58. Mr. Taylor acknowledged that he does not know how he is perceived in the "relevant communit[ies]." Dkt. 50-1, at 59. Mr. Taylor submitted letters from two individuals who stated that they viewed him as a person of "mixed race" or "mixed heritage" (Dkts. 50-1 at 63-64). Neither of these individuals indicated with which racial group they identified or which one Mr. Taylor identified. *Id.* In regard to evidence that he has experienced social and economic disadvantage, Mr. Taylor refers to his answer to a similar inquiry during the State certification process for MBE status where he discusses being ill as a child, his father's return from Vietnam; and his father's subsequent abuse of alcohol and physical abuse of Mr. Taylor (Dkt. 50-1, at 108-109). Dkt. 50-1 at 60.

On June 27, 2014, Orion's DBE application was denied because there was insufficient evidence that he was a member of a racial group recognized under the regulations, was regarded

by the relevant community as either Black or Native American, or that he held himself out as being a member of either group over a long period of time prior to his application. Dkt. 50-1, at 46. OMWBE also found that even if there was sufficient evidence to find that Mr. Taylor was a member of either of these racial groups, "the presumption of disadvantage has been rebutted," and the evidence Mr. Taylor submitted was insufficient to show that he was socially and economically disadvantaged. *Id.*, at 48.

## F. PLAINTIFFS APPEAL OMWBE'S DENIAL TO USDOT AND FILE A WRIT OF MANDAMUS IN THE WESTERN DISTRICT OF WASHINGTON

Around September 22, 2014, through counsel, Mr. Taylor appealed the denial of the DBE certification to the USDOT. Dkt. 50-1, at 16-22. On September 29, 2014, USDOT acknowledged receipt of Orion's appeal, and stated that it would docket the appeal after receiving the complete administrative record. Dkt. 50-1, at 52. USDOT stated that there were several appeals pending so Plaintiffs would have to wait six months for a decision. *Id.* Plaintiffs were further directed to email the department if it had not contacted them after that time. *Id.* On October 13, 2014, USDOT received the administrative record. Dkt. 50-1, at 7. After three requests by Plaintiffs regarding the status of the appeal (Dkt. 50-1, at 10-15), in February of 2015, the USDOT acknowledged that it had received the administrative record and had docketed Orion's appeal (Dkt. 50-1, at 7).

On April 24, 2015, Plaintiffs filed a Petition for Writ of Mandamus in an effort to get the USDOT to make a decision on the appeal. *Orion Insurance Group v. Washington State Office of Minority & Women's Business Enterprises, et al.* U.S. District Court for the Western District of Washington case number 15-5267 BHS. Plaintiffs asserted that their APA rights had been violated when USDOT failed to make a decision within 180 days or provide information for when a decision was forthcoming. *Orion Insurance Group v. Washington State Office of*

*Minority & Women's Business Enterprises, et al.* U.S. District Court for the Western District of Washington case number 15-5267 BHS, Dkts. 1 and 15. The parties stipulated to a stay of the case, which was granted, after the USDOT committed to providing a decision by December 2015. *Orion Insurance Group v. Washington State Office of Minority & Women's Business Enterprises, et al.* U.S. District Court for the Western District of Washington case number 15-5267 BHS, Dkt. 15 and 16. The parties' stipulation provided that: "the parties agree that if the USDOT makes a decision by December 31, 2015, further proceedings in the above captioned matter will be rendered moot, and this case should be dismissed." *Orion Insurance Group v. Washington State Office of Minority & Women's Business Enterprises, et al.* U.S. District Court for the Western District of Washington case number 15-5267 BHS, Dkt. 15, at 2. Plaintiffs voluntarily dismissed this case after the USDOT issued its decision. *Orion Insurance Group v. Washington State Office of Minority & Women's Business Enterprises, et al.* U.S. District Court for the Western District of Washington case number 15-5267 BHS, Dkt. 17.

On October 15, 2015, the USDOT affirmed the denial of Orion's DBE certification, concluding that there was substantial evidence in the administrative record to support OMWBE's decision. Dkt. 50-1, at 1-6.

### G. PLAINTIFFS FILE THIS CASE

This case was filed on July 1, 2016. Dkt. 1. Plaintiffs assert claims for (A) violation of the Administrative Procedures Act, 5 U.S.C. § 706, (B) "Discrimination under 42 U.S.C. § 1983" (reference is made to Equal Protection), (C) "Discrimination under 42 U.S.C. § 2000d," (D) violation of Equal Protection under the United States Constitution, (E) violation of the Washington Law Against Discrimination and Article 1, Sec. 12 of the Washington State Constitution, and (F) assert that the definitions in 49 C.F.R. § 26.5 are void for vagueness. Dkt.

2. Plaintiffs seek damages, injunctive relief: ("[r]eversing the decisions of the USDOT, Ms. Jones and OMWBE, and OMWBE's representatives . . . and issuing an injunction and/or declaratory relief requiring Orion to be certified as a DBE," and a declaration the "definitions of 'Black American' and Native American' in 49 C.F.R. § 26.5 to be void as impermissibly vague,") and attorneys' fees, and costs. *Id.*

## H. FEDERAL DEFENDANTS' MOTION TO DISMISS GRANTED, IN PART

On November 17, 2016, the claims asserted against the Acting Director of the USDOT, in her individual capacity, were dismissed for lack of personal jurisdiction and because Plaintiffs failed to show that they were entitled to either monetary or non-monetary relief from her in her individual capacity. Dkt. 44. All Plaintiffs' claims for monetary damages against the Federal Defendants were dismissed because Plaintiffs failed to show that the United States waived its sovereign immunity on their claims for monetary damages. *Id.* The Plaintiffs' 42 U.S.C. § 1983 claims and 42 U.S.C. § 2000d claims asserted against the Federal Defendants were dismissed. *Id.* Plaintiff's claims against the Federal Defendants for violations of the WLAD and the Washington State Constitution were also dismissed. *Id.* Plaintiff's remaining claims against the Federal Defendants are for equitable relief for violations of the APA, equitable relief for violation of the Equal Protection Clause of the U.S. Constitution, and declaratory relief regarding the claim that the definitions of "Black" and "Native American" in the DBE's regulations are void for vagueness. *Id.*

## I. PENDING MOTIONS

In their pending motion for partial summary judgment, Plaintiffs argue that the Court should consider facts beyond the administrative record. Dkt. 48. Plaintiffs move for summary judgment on their APA claims and argue that all Defendants violated the APA when they failed

1  to give Plaintiffs the statutory presumption that he was "socially and economically

2  disadvantaged" based on his appearance on his driver's license and based on the fact that his

3  birth certificate did not indicate ethnicity. *Id.* Plaintiffs argue that the State Defendants violated

4  the APA when they failed to give him notice of their concerns and afford Plaintiffs an in person

5  hearing to provide information and arguments concerning why Orion should have been certified,

6  which Plaintiffs assert was required under 49 C.F.R. § 26.87(d). *Id.* Plaintiffs argue that the

7  Federal Defendants violated the APA when they failed to reverse the State's decision. *Id.*

8  Plaintiffs argue that the Federal Defendants violated the APA when they failed to adhere to 49

9  C.F.R. § 26.89(f)(8) regarding the timeliness of a decision. *Id.* Plaintiffs also move for summary

10  judgement against the State Defendants on their claims under 42 U.S.C. § 1983, 42 U.S.C. §

11  2000d, and the WLAD. *Id.*

12      The State Defendants move for summary dismissal of the claims asserted against them

13  and argue that the APA claims should be dismissed because they did not act arbitrarily and

14  capriciously. Dkt. 58. The State Defendants assert that Plaintiffs' claims for equal protection

15  asserted against them should be dismissed. *Id.* To the extent that Plaintiffs assert constitutional

16  claims for damages or retrospective relief against the State or the individual state defendants in

17  their official capacities, under § 1983, the State Defendants argue that they are not "persons"

18  under the statute and so those claims should be dismissed. *Id.* To the extent that Plaintiff asserts

19  § 1983 claims against the individual state defendants in their individual capacities, the State

20  Defendants argue that those claims should be dismissed because they are entitled to either

21  absolute or qualified immunity. *Id.* The State Defendants argue that Plaintiffs' claim under 42

22  U.S.C. § 2000d should be dismissed because there is no evidence of intentional discrimination.

23  *Id.* The State Defendants argue that Plaintiffs' claim under the WLAD should be dismissed

24

1  because there is no evidence of racial animus.  *Id.*  They also assert that Plaintiffs' claims under

2  the Washington Constitution should be dismissed because Plaintiffs fail to identify a private

3  cause of action for violation of the Washington Constitution.  *Id.*

4      The Federal Defendants also move for summary dismissal of all the remaining claims

5  asserted against them. Dkt. 54.  They argue that judicial review of the decision to deny DBE

6  status to Orion must be confined to the administrative record.  *Id.*  The Federal Defendants assert

7  that the APA claims should be dismissed because Plaintiffs were not improperly denied a

8  presumption of social and economic disadvantage, Plaintiffs were not due a hearing, the Federal

9  Defendants' decision was timely, and even if it wasn't, the claim that it was is moot, and lacks

10  merit, and the Federal Defendants' actions were not otherwise arbitrary and capricious.  *Id.*  The

11  Federal Defendants argue that if the Court finds that they did violate that APA, the proper

12  remedy is remand, not an order certifying Orion as a DBE.  *Id.*  The Federal Defendants also

13  argue Plaintiffs' claims for equal protection and void for vagueness should be dismissed for

14  failure to state a claim and argue, that if the Court would like to take into consideration discovery

15  responses or the administrative record, summary judgment on these claims is appropriate.  *Id.*

16      On July 10, 2017, the Plaintiffs' motion to continue the State Defendants' summary

17  judgement motion regarding Plaintiffs' equal protection claim was granted. Dkt. 74.  In that

18  same order, the parties were notified that the Federal Defendants' motion to dismiss Plaintiffs'

19  equal protection and void for vagueness claims was being converted into a motion for summary

20  judgment.  *Id.*  Parties were given an extension of time to file supplemental briefing.  *Id.*  They

21  have now done so (Dkts. 76, 77, and 79) and the motions for summary judgment are ripe for

22  review.

23      **J.  ORGANIZATION OF OPINION**

24

1    This opinion will first consider the Plaintiffs' motion to consider documents outside the

2    administrative record.  It will then address the parties' cross motions regarding Plaintiffs' claims

3    under the APA, Plaintiffs' claims for violation of Equal Protection, Plaintiffs' void for vagueness

4    claims, Plaintiffs' claims against the State Defendants pursuant to 42 U.S.C. § 1983, Plaintiffs'

5    claims against the State Defendants for violation of 42 U.S.C. § 2000d, and, lastly, Plaintiffs'

6    claims against the State Defendants for violations of the Washington State Constitution, and for

7    violation of the WLAD.

8                                   **II.    DISCUSSION**

9    **A.  CONSIDERING DOCUMENTS OUTSIDE THE ADMINISTRATIVE RECORD
         FOR APA CLAIMS**

10

11       In reviewing cases under the APA,

12           At the district court level, extra-record evidence is admissible if it fits into one of
             four "narrow" exceptions: (1) if admission is necessary to determine whether the
13           agency has considered all relevant factors and has explained its decision, (2) if the
             agency has relied on documents not in the record, (3) when supplementing the
14           record is necessary to explain technical terms or complex subject matter, or (4)
             when plaintiffs make a showing of agency bad faith.

15

16   *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499

17   F.3d 1108, 1117 (9th Cir. 2007) (*internal citation omitted*).

18       Plaintiffs' motion to consider documents outside the administrative record (Dkt. 48)

19   should be denied.  Plaintiffs acknowledge that the third exception (supplementing the record to

20   explain technical terms etc.) does not apply.  There is no showing that any of the other

21   exceptions apply.  There is no evidence that the Defendants failed to "consider[] all relevant

22   factors" or failed to explain their decision.  There is no evidence that the Defendants "relied on

23   documents not in the record."  Plaintiffs fail to make a "showing of agency bad faith."  There is

24

1  no basis to examine evidence outside the administrative record in regard to Plaintiffs' claims

2  under the APA.

3  **B.  MOTION FOR SUMMARY JUDGMENT STANDARD**

4  Summary judgment is proper only if the pleadings, the discovery and disclosure materials on

5  file, and any affidavits show that there is no genuine issue as to any material fact and that the

6  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is

7  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

8  showing on an essential element of a claim in the case on which the nonmoving party has the

9  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

10  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

11  for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586

12  (1986)(non-moving party must present specific, significant probative evidence, not simply "some

13  metaphysical doubt."); Conversely, a genuine dispute over a material fact exists if there is

14  sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

15  the differing versions of the truth. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986);

16  T.*W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir.

17  1987).

18  The determination of the existence of a material fact is often a close question.  The court

19  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

20  e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.*W.

21  *Elect.*, at 630.  The court must resolve any factual issues of controversy in favor of the

22  nonmoving party only when the facts specifically attested by that party contradict facts

23  specifically attested by the moving party.  The nonmoving party may not merely state that it will

24

discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect.*, at 630. Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

"[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

## C. APA STANDARD

Under the APA, this court is authorized to:

> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity.... [or] (D) without observance of procedure required by law.

5 U.S.C. § 706(1)-(2).

## D. CLAIMS FOR VIOLATIONS OF THE APA BASED ON "ARBITRARY OR CAPRICIOUS" ACTION OR ACTION "WITHOUT OBSERVANCE OF PROCEDURE REQUIRED BY LAW"

In considering whether to set aside an agency's action as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," courts must determine "whether the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Ranchers Cattlemen,* at 1115 (*internal quotations omitted*). "This standard of review is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Id.* "Where the agency has relied on relevant evidence such that a reasonable mind might accept as adequate to support a

1  conclusion, its decision is supported by 'substantial evidence.' Even if the evidence is

2  susceptible of more than one rational interpretation, the court must uphold the agency's

3  findings." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir.

4  2014)(*citing Bear Lake Watch, Inc. v. FERC*, 324 F.3d 1071, 1076 (9th Cir.2003)).

5        Plaintiffs assert that the State Defendants acted in an arbitrary and capricious manner in

6  violation of the APA when they failed to give him the presumption of social and economic

7  disadvantage under the DBE governing regulations, failed to give him notice of their concerns,

8  and failed give him an in person hearing. Dkt. 48. Plaintiffs assert that the Federal Defendants

9  acted in an arbitrary and capricious manner in violation of the APA when they affirmed the State

10  decision (considering its failure to give him the presumption and failure to give him notice and a

11  hearing) and failed to timely respond to Plaintiff's appeal. Dkt. 48.

12             1.      <u>State Defendants' Not Giving Plaintiffs the Presumption of Disadvantage</u>

13        Under 49 C.F.R. § 26.67(a)(1),

14      [OMWBE (here)] must rebuttably presume that citizens of the United States (or
lawfully admitted permanent residents) who are women, Black Americans,

15      Hispanic Americans, Native Americans, Asian–Pacific Americans, Subcontinent
Asian Americans, or other minorities found to be disadvantaged by the SBA, are

16      socially and economically disadvantaged individuals. [OMWBE] must require
applicants to submit a signed, notarized certification that each presumptively

17      disadvantaged owner is, in fact, socially and economically disadvantaged.

18  Further, under 49 C.F.R. 26.61(c), OMWBE "must rebuttably presume that members of the

19  designated groups in § 26.67(a) are socially and economically disadvantaged. . . In order to

20  obtain the benefit of the rebuttable presumption, individuals must submit a signed, notarized

21  statement that they are a member of one of the groups." Unlike Washington's MBE program,

22  the federal regulations provide further, that "[i]f, after reviewing the signed notarized statement

23  of membership in a presumptively disadvantaged group (see § 26.61(c)), [OMWBE has] a well

24

founded reason to question the individual's claim of membership in that group, [OMWBE] must

require the individual to present additional evidence that he or she is a member of the group." 49

C.F.R. § 26.63(a)(1).  Further, under the regulations, OMWB was to provide Mr. Taylor a

written explanation of its reasons for questioning his group membership and request additional

evidence of "whether the person has held himself out to be a member of the group over a long

period of time prior to application for certification," "whether the person is regarded as a

member of the group by the relevant community," and "may require the applicant to produce

appropriate documentation of group membership." 49 C.F.R. § 26.63(a)(2) and (b).  Pursuant to

49 C.F.R. § 26.61(b), "the firm seeking certification has the burden of demonstrating . . ., by a

preponderance of the evidence, that it meets the requirements of this subpart concerning group

membership or individual disadvantage, business size, ownership, and control."

        Considering all the evidence in the record regarding Mr. Taylor's membership in either

the Black or Native American group, OMWBE found that:

        Mr. Taylor submitted a birth certificate that did not indicate race, so this
        document failed to prove that he is a member of a minority group.

        Mr. Taylor provided documentation of a Negro woman he claimed is an ancestor.
        This documentation is incomplete and does not prove that the individual is an
        ancestor of Mr. Taylor. Even if the individual is an ancestor of Mr. Taylor's, it
        fails to prove that he is a member of a minority group, or regarded as a member of
        a minority group.

        Mr. Taylor submitted a DNA test to prove he is 4% Sub-Saharan African and 6%
        Native American. The test results for Mr. Taylor and his father are highly
        inconsistent and incomplete. Half of a son's DNA comes from his father and half
        comes from his mother. OMWBE acknowledges that the pieces of DNA from
        each parent are random and will not equal exactly half from each parent. The two
        DNA tests between father and son should, however, be related. Without a
        complete picture of Mr. Taylor's mother's DNA, OMWBE contends that the tests
        are not reliable to determine ethnicity. This information fails to prove that Mr.
        Taylor is a member of a minority group, or regarded as a member of a minority
        group.

Also, there is a 3.3% statistical noise associated with each test performed by Ancestry by DNA. Eliminating the statistical noise from the DNA test results provided would indicate that Mr. Taylor's ancestry is 2.7% Indigenous American and 0.7% Sub-Saharan African. Additionally, from reviewing the information on the Ancestry by DNA website, it is unclear if the website's use of the term Sub-Saharan African corresponds to the definition of Black American in the CFR, which refers to "persons having origins in the Black racial groups of Africa." Regardless, the low figures combined with the inconsistencies with the results for Mr. Taylor and his father render the test as insufficient to prove that Mr. Taylor is a member of a minority group, or regarded as a member of a minority group.

Mr. Taylor submitted two letters where the authors state they consider Mr. Taylor to be of mixed heritage, however, they do not identify Mr. Taylor as Black or Native American. These letters do not establish that Mr. Taylor, who is visually identifiable as Caucasian, is a member of a non-Caucasian group. Mr. Taylor has failed to meet his burden that he is a member of a minority group, or regarded as a member of a minority group.

Mr. Taylor submitted insufficient evidence when he was asked in an additional information request about his membership in the Black and/or Native American group. The only substantive evidence provided was a statement that he is a member of the NAACP, has a subscription to Ebony magazine, and he is very interested in Black social issues. All individuals, regardless of minority status, may join the NAACP and subscribe to Ebony magazine, or be concerned about issues. This fails to prove that Mr. Taylor is a member of a minority group, or regarded as a member of minority group.

Dkt. 50-1, at 47.

The OMWBE did not act in an arbitrary or capricious manner when it found that there was insufficient evidence that Mr. Taylor was a member of either the Black or Native American groups. The record supports OMWBE's "well founded reason to question" Mr. Taylor's claim of membership in either the Black or Native American groups. The State Defendants considered the evidence submitted initially and the supplemental evidence provided by Mr. Taylor in response to the State's written inquiry which explained its concerns and asked for him for clarification and other further documentation. The OMWBE's decision then "articulated a rational connection between the facts found and the choices made." *Ranchers,* at 115.

1  Plaintiffs assert that the OMWBE's decision that he was not a part of either group ran

2  counter to the evidence before the agency because it had already found that he qualified under

3  the state program as a MBE and the definitions of "Black" and "Native American" that are the

4  same or substantially similar to the federal ones.  Plaintiff's argument is unpersuasive.

5  OMWBE's decision was guided by the federal regulations.  Unlike Washington state law, the

6  federal regulations contain a provision for "well founded reason[s] to question group

7  membership," provided a basis for rebutting presumptions, and shifted burdens of proof.  Those

8  provisions were important in the differing results here.

9  Plaintiff argues that OMWBE decision was arbitrary and capricious because it did not

10  find him to be "Black enough" based on his appearance on his driver's license.  OMWBE

11  provided several reasons to question Mr. Taylor's claim of membership in either racial group.

12  Mr. Taylor improperly places heavy emphasis on his genotype rather than his phenotype.

13  "Genes form the basis for hereditary traits in living organisms. The human genome consists of

14  approximately 22,000 genes packed into 23 pairs of chromosomes." *Ass'n for Molecular*

15  *Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2111 (2013)(*internal citation omitted*).

16  Webster's Third New International Dictionary defines a "genotype" as "the genetic constitution

17  of an individual or group, the totality of genes possessed by an individual or group."  In contrast,

18  "a phenotype refers to all the **observable** characteristics of an organism, such as shape, size,

19  color, and behavior, that result from the interaction of the organism's genotype with its

20  environment."  *See In re Roslin Inst*. (Edinburgh), 750 F.3d 1333, 1338 (Fed. Cir.

21  2014)(*emphasis added*).  Plaintiff points to no evidence that discrimination regarding the award

22  of federal transportation dollars has occurred because of a person's genetic makeup (genotype)

23  as opposed to their appearance (phenotype), as is well documented by Congress.  Plaintiffs'

24

reliance on Mr. Taylor's genetic makeup, without regard to his appearance, is misplaced and does not demonstrate that OMWBE acted arbitrarily or capriciously in finding that there was insufficient evidence that Mr. Taylor was a member of either the Black or Native American groups.

OMWBE did not act arbitrarily or capriciously when it found that the presumption that Mr. Taylor was socially and economically disadvantaged was rebutted because there was insufficient evidence that he was a member of either the Black or Native American groups. Nor did it act arbitrarily and capriciously when it found that Mr. Taylor failed to demonstrate, by a preponderance of the evidence, that Mr. Taylor was socially and economically disadvantaged. Under 49 C.F.R. § 26.63(b)(1), after OMWBE determined that Mr. Taylor was not a "member of a designated disadvantaged group," Mr. Taylor "must demonstrate social and economic disadvantage on an individual basis." Accordingly, pursuant to 49 C.F.R. § 26.61(d), Plaintiffs had the burden to prove, by a preponderance of the evidence, that Mr. Taylor was socially and economically disadvantaged. OMWBE found that:

> Mr. Taylor submitted insufficient evidence when he was asked in an additional information request how he has experienced social and economic disadvantage. Mr. Taylor did provide evidence of illness and abuse caused by his father who suffered due to experiences in Vietnam, but these matters were unrelated to race and ethnicity. Thus, Mr. Taylor has failed to prove social and economic disadvantage in his individual case.

Dkt. 50-1, at 48. The OMWBE also noted that,

> Mr. Taylor's attorney wrote that Mr. Taylor did not discover the full extent of his heritage until late in life. It is nonsensical for Mr. Taylor to claim that he has encountered social and economic disadvantage due to a heritage he was not aware of until the DNA test conducted in 2010.

Dkt. 50-1, at 48. In making these decisions, OMWBE considered the relevant evidence and "articulated a rational connection between the facts found and the choices made." *Ranchers,* at

1115. By requiring individualized determinations of social and economic disadvantage, the

federal DBE "program requires states to extend benefits only to those who are actually

disadvantaged." *See Midwest Fence Corp. v. United States Dep't of Transp.*, 840 F.3d 932, 946

(7th Cir. 2016). OMWBE did not act arbitrary or capriciously when it found that Mr. Taylor

failed to show he was "actually disadvantaged" or when it denied Plaintiff's application.

### 2. OMWBE's Failure to Give an Opportunity for In Person Hearing

Plaintiffs assert that OMWBE acted arbitrary and capriciously when it failed to give

Plaintiffs an in person hearing pursuant to 49 C.F.R. § 26.67(b)(2). Under 49 C.F.R. §

26.67(b)(2), "[i]f you have a reasonable basis to believe that an individual who is a member of

one of the designated groups is not, in fact, socially and/or economically disadvantaged, you

may, at any time, start a proceeding to determine whether the presumption should be regarded as

rebutted with respect to that individual."

OMWBE did not act "arbitrarily and capriciously" when it failed to give Mr.

Taylor an in person hearing in accord with 49 C.F.R. § 26.67(b)(2). OMWBE found that

there was insufficient evidence that Mr. Taylor was a member of one of the designated

groups. The plain language of the regulation states it applies only if OMWBE found he

was a member of one of the designated groups. It did not. Not only did it not act

arbitrarily and capriciously, OMWBE acted in "observance of procedure required by

law." 5 U.S.C. § 706 (2)(d). Plaintiffs' claim, on this ground, should be summarily

dismissed.

### 3. USDOT's Decision to Affirm State Denial of DBE Status

Pursuant to 49 C.F.R. § 26.89(f)(1) and (f)(2), the USDOT may reverse an applicant's

denial of DBE certification only if it determines, based on the entire administrative record, that

the denial was "unsupported by substantial evidence or inconsistent with the substantive or procedural provisions of [part 26] concerning certification."  The USDOT decides the appeal based on the administrative record, which may be supplemented.  49 C.F.R. § 26.89(e).

Plaintiffs contend that the USDOT's decision to affirm the OMWBE's decision to deny Plaintiffs DBE certification was arbitrary and capricious considering the errors made by the OMWBE.  The USDOT did not act arbitrarily or capriciously when it found that substantial evidence in the record supported the OMWBE's decision to deny Plaintiffs DBE certification. The USDOT's decision affirming OMWBE's denial provided:

> Orion does not demonstrate that its owner is a member of a group that is presumed to be socially and economically disadvantaged under §26.67(n). The uncontroverted evidence is that Ralph Taylor is as much as 99.3 percent non-Black. The same evidence shows Mr. Taylor to be, minimally, 92.7% non-Black. [OMWBE] states that the bulk of available evidence indicates that Ralph Taylor is Caucasian or at least primarily, overwhelmingly, Caucasian. Accordingly, the Department agrees with [OMWBE] that the seeming inconsistencies (including between Mr. Taylor's appearance and his notarized statement claiming group membership) gave rise to a question under §26.63 which required [OMWBE] to make further inquiries of the kind described in that provision.

> [OMWBE] consequently had grounds ("a well founded reason to question group membership") under §26.63(a) to request additional information under §26.63(b). By operation of §26.63(b)(1), Orion's owner must demonstrate that he meets the §26.67(d) requirements for individual social and economic disadvantage. Under the latter provision, the guidance found at Appendix E applies. As noted in the preceding section, Orion did not produce the evidence that Appendix E requires for an individual showing, of social and economic disadvantage. Accordingly, the firm is ineligible for certification. Orion protests this result as burdensome and discriminatory, but it accurately reflects the analysis that the Regulation requires.

> On appeal, Orion would change the inquiry. Orion relies exclusively on the technical argument that one portion of the §26.5 definitional provision speaks simply of "origins," and Orion asserts that the Regulation nowhere prescribes an explicit percentage relating to ancestry. Orion is correct that Black Americans are defined to include persons with "origins" in the Black racial groups of Africa. Orion, however, neglects to note that the broader §26.5 definition of "socially and economically disadvantaged individual" also requires that the person "have been subjected to racial or ethnic prejudice or cultural bias within American society

because of his or her identity as a members [sic] of groups and without regard to his or her individual qualities." We find no substantial evidence of such bias. See generally §26.67(d) and the Regulation's Appendix E.

Further, construing the narrower definition as broadly as Orion advocates would strip the provision of all exclusionary meaning. It is commonly acknowledged that all of mankind "originated" in Africa. Therefore, if any (Black) African ancestry; no matter how attenuated, sufficed for DBE purposes, then this particular definition would be devoid of any distinction- which was clearly not the Department's intent in promulgating it. There is little to no evidence that Mr. Taylor ever suffered any adverse consequences in business because of his genetic makeup.

Sections 26.61.; 26.63(b)(l), and 26.67(d), in any event, independently require the applicant to demonstrate social and economic disadvantage. Orion fails to make that showing on the record before us, by a preponderance of the evidence. There is little to no persuasive evidence that Mr. Taylor has personally suffered social and economic disadvantage by virtue of being a Black American.

Dkt. 50-1 at 4-5.

The USDOT did not act arbitrarily or capriciously when it found that substantial evidence in the record supported the OMWBE's decision to deny Plaintiffs' DBE certification. The USDOT considered the relevant evidence and then "articulated a rational connection" between the facts and the decision. *Ranchers,* at 115. Plaintiffs' claim, that the USDOT violated the APA because it affirmed the OMWBE, should be summarily dismissed.

Further, USDOT did not act arbitrarily or capriciously when it affirmed OMWBE's decision despite the fact that no in person hearing under 49 C.F.R. § § 26.67(b)(2) was conducted. As explained above in Section II. C. 2, the regulation applies only if OMWBE found Mr. Taylor was a member of one of the designated groups. It did not do so. USDOT did not violate the APA in affirming OMWBE's decision.

### 4.    USDOT's Failure to Give a Decision within 180 Days

Plaintiffs assert that the USDOT violated the APA when it failed to issue a decision regarding the appeal within 180 days. (To the extent that Plaintiffs sought monetary relief for

1  this violation of the APA, that claim has been dismissed.)  Plaintiffs' claim is without merit and

2  has been rendered moot.

3  Under 49 C.F.R. § 26.89(f)(8), "[t]he Department's policy is to make its decision within 180

4  days of receiving the complete administrative record."  If no decision is rendered in that time

5  frame, "the Department provides written notice to concerned parties, including a statement of the

6  reason for the delay and a date by which the appeal decision will be made."  *Id.*

7  The USDOT did not violate the APA regarding the timing of the decision on appeal.

8  While it did not make a decision within the 180 day timeframe, it wrote Plaintiff a letter and

9  indicated the reason for the delay and indicated that the decision on his appeal would be made

10 and provided an estimate for when the decision would be issued.  Dkt. 50-1, at 52.  It did not

11 arbitrarily or capriciously and acted in "observance of procedure required by law."  5 U.S.C. §

12 706 (2)(d).

13 Further, in their earlier suit against the USDOT, Plaintiffs asserted that their APA rights had

14 been violated when USDOT failed to make a decision within 180 days or provide information

15 for when a decision was forthcoming.  *Orion Insurance Group v. Washington State Office of*

16 *Minority & Women's Business Enterprises, et al.* U.S. District Court for the Western District of

17 Washington case number 15-5267 BHS, Dkts. 1 and 15.  The parties stipulated to a stay of the

18 case, which was granted, after the USDOT committed to providing a decision by December

19 2015.  *Orion Insurance Group v. Washington State Office of Minority & Women's Business*

20 *Enterprises, et al.* U.S. District Court for the Western District of Washington case number 15-

21 5267 BHS, Dkt. 15 and 16.  That document provided:  "the parties agree that if the USDOT

22 makes a decision by December 31, 2015, further proceedings in the above captioned matter will

23 be rendered moot, and this case should be dismissed."  *Orion Insurance Group v. Washington*

24

1  *State Office of Minority & Women's Business Enterprises, et al.* U.S. District Court for the

2  Western District of Washington case number 15-5267 BHS, Dkt. 15, at 2.  Plaintiffs voluntarily

3  dismissed the case after the USDOT issued its decision. *Orion Insurance Group v. Washington*

4  *State Office of Minority & Women's Business Enterprises, et al.* U.S. District Court for the

5  Western District of Washington case number 15-5267 BHS, Dkt. 17.

6      Plaintiffs' claim, that the USDOT violated the APA when it failed to make a decision on

7  their appeal within 180 days, should be summarily dismissed.

8      **E.  CLAIMS FOR VIOLATION OF EQUAL PROTECTION**

9      Plaintiffs assert claims for violation of their Equal Protection rights under the U.S.

10  Constitution against all Defendants.  It is not clear whether Plaintiffs intend to assert this claim

11  against the State Defendants via the APA or 42 U.S.C. § 1983.  To the extent that Plaintiffs also

12  assert constitutional claims against the State Defendants pursuant to 42 U.S.C. § 1983, the State

13  Defendants' additional defenses to these claims will be addressed below in Section II. H.

14      To the extent that Plaintiffs assert a claim that, on its face, the federal DBE program violates

15  the Equal Protection Clause of the U.S. Constitution, the claim should be dismissed.  Under the

16  Equal Protection Clause of the Fourteenth Amendment, "[n]o State shall . . . deny to any person

17  within its jurisdiction the equal protection of the laws."  The Ninth Circuit has held that the

18  federal DBE program, including its implementing regulations, does not, on its face, violate the

19  Equal Protection Clause of the U.S. Constitution. *Western States Paving Co. v. Washington*

20  *State Department of Transportation*, 407 F.3d 983 (9th Cir. 2005).  The *Western States* Court

21  held that Congress had evidence of discrimination against women and minorities in the national

22  transportation contracting industry and the federal DBE program was a narrowly tailored means

23  of remedying that sex and raced based discrimination. *Id.*  Accordingly, race-based

24

1    determinations under the program have been determined to be constitutional. *Id.* Several other

2    circuits, including the Seventh, Eighth, and Tenth have held the same. *Midwest Fence Corp. v.*

3    *United States Dep't of Transp.*, 840 F.3d 932, 936 (7th Cir. 2016); *Sherbrooke Turf, Inc. v.*

4    *Minnesota Dep't of Transportation*, 345 F.3d 964, 973 (8th Cir. 2003); *Adarand Constructors,*

5    *Inc. v. Slater*, 228 F.3d 1147, 1155 (10th Cir. 2000).

6         To the extent that Plaintiffs assert that the Defendants, in applying the federal DBE program

7    to him, violated the Equal Protection Clause of the U.S. Constitution, the claim should be

8    dismissed. Plaintiffs argue that, as applied to them, the regulations "weigh adversely and

9    disproportionately upon" mixed-race individuals, like Mr. Taylor.  Dkts. 63, at 15 and 76.  This

10   claim should be dismissed.  The Equal Protection Clause prohibits only intentional

11   discrimination. *Hispanic Taco Vendors of Wash. v. City of Pasco,* 994 F.2d 676, 679 (9th Cir.

12   1993).  Even considering materials filed outside the administrative record, Plaintiffs point to no

13   evidence that the application of the regulations here was done with an intent to discriminate

14   against mixed-race individuals, or that it was done with racial animus.  Further, Plaintiffs offer

15   no evidence that application of the regulations creates a disparate impact on mixed-race

16   individuals.  Plaintiffs' remaining arguments relate to the facial validity of the program, and so,

17   as above, should be dismissed.

18       To the extent that Plaintiffs base their equal protection claim on an assertion that they were

19   treated differently than others similarly situated, their "class of one" equal protection claim

20   should be dismissed.  For a class of one equal protection claim, Plaintiffs must show they have

21   been intentionally treated differently from others similarly situated and that there is no rational

22   basis for the difference in treatment.  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

23

24

1    Plaintiffs have failed to show that Mr. Taylor was intentionally treated differently than

2    others similarly situated.  Plaintiffs point to no evidence of intentional differential treatment by

3    the Defendants.  Plaintiffs fail to show that others that were similarly situated were treated

4    differently.  Plaintiffs assert that another company owned by an individual who was

5    acknowledged by a tribe as a member of that tribe, was granted DBE status, when Mr. Taylor,

6    who may have more genetic Native American heritage, was denied certification in the program.

7    These two parties are not similarly situated.  Mr. Taylor is not a member of any particular tribe,

8    and was unaware of any Native American heritage prior to his test.  He makes no showing that

9    he is similarly situated to anyone else who was granted DBE status when he was not.

10    Further, Plaintiffs have failed to show that either the State or Federal Defendants had no

11    rational basis for the difference in treatment.  Both the State and Federal Defendants offered

12    rational explanations for the denial of the application.  Plaintiffs' Equal Protection claims,

13    asserted against all Defendants, should be denied.

14    **F.  VOID FOR VAGUENESS CLAIM**

15    Plaintiffs assert that the regulatory definitions of "Black American" and both the definition of

16    "Native American" that was applied to Plaintiffs and a new definition of "Native American" are

17    void for vagueness, presumably contrary to the Fifth and Fourteenth Amendments' due process

18    clauses.  It is again not clear whether Plaintiffs intend to assert this claim against the State

19    Defendants, and whether they intend to make the claim via the APA or 42 U.S.C. § 1983.  To the

20    extent that Plaintiffs also assert constitutional claims against the State Defendants pursuant to 42

21    U.S.C. § 1983, the State Defendants' additional defenses to these claims will be addressed below

22    in Section II. H.

23          1.  Jurisdiction to Consider Revised Definition of "Native American"

24

The first issue raised in relation to this claim is whether the Court has jurisdiction to address the revised definition of "Native American" which was changed in November of 2014, after Plaintiffs' application was denied. Defendants properly point out that this definition was not ever applied to the Plaintiffs, and so they do not have standing to challenge the revised definition. Dkt. 54-55, at 34 (*citing Calop Bus. Sys., Inc. v. City of Los Angeles,* 614 F. App'x 867 (9th Cir. 2015) (dismissing for lack of standing a challenge to a provision as being unconstitutionally vague because Plaintiff was never subjected to the provision). Plaintiffs do not show that the definition was applied to them. Accordingly, this Court does not have jurisdiction to consider the claim that the revised definition of "Native American," which was not used in consideration of Plaintiffs' application, was unconstitutionally vague. That portion of the vagueness claim should be dismissed.

2.  Vagueness Claim regarding Definitions Applied To Plaintiffs

The void for "[v]agueness doctrine grew out of the due process clauses of the Fifth and Fourteenth Amendments." *See Midwest Fence Corp. v. United States Dep't of Transp.*, 840 F.3d 932, 947–48 (7th Cir. 2016). In the context of criminal statutes, "[a] law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement." *United States v. Mincoff*, 574 F.3d 1186, 1201 (9th Cir. 2009). The Ninth Circuit uses the same standard in civil challenges to laws under the void for vagueness doctrine. *See Gammoh v. City of La Habra,* 395 F.3d 1114, 1119 (9th Cir. 2005)(holding that exotic club owner's challenge to city ordinance as unconstitutionally vague because it used subjective terms was properly dismissed because "ordinary people could understand what conduct is permitted and in a manner that does not encourage arbitrary and discriminatory enforcement.") Although it can be applied in the civil

context, the Seventh Circuit Court of Appeals has noted that in relation to the DBE regulations, the void for vagueness "doctrine is a poor fit." *See Midwest Fence Corp. v. United States Dep't of Transp.*, 840 F.3d 932, 947–48 (7th Cir. 2016). Unlike criminal or civil statutes that prohibit certain conduct, the Seventh Circuit noted that the DBE regulations do not threaten parties with punishment, but, at worst, cause lost opportunities for contracts. *Id.*

In any event, Plaintiffs' claims that the definitions of "Black American" and of "Native American" in the DBE regulations are impermissibly vague should be dismissed. The relevant regulations that were applied to Plaintiffs provide:

> Socially and economically disadvantaged individual means any individual who is a citizen (or lawfully admitted permanent resident) of the United States and who has been subjected to racial or ethnic prejudice or cultural bias within American society because of his or her identity as a members of groups and without regard to his or her individual qualities. The social disadvantage must stem from circumstances beyond the individual's control.

> (1) Any individual who a recipient finds to be a socially and economically disadvantaged individual on a case-by-case basis. An individual must demonstrate that he or she has held himself or herself out, as a member of a designated group if you require it.

> (2) Any individual in the following groups, members of which are rebuttably presumed to be socially and economically disadvantaged:

>> (i) "Black Americans," which includes persons having origins in any of the Black racial groups of Africa; . . .

>> (iii) "Native Americans," which includes persons who are American Indians, Eskimos, Aleuts, or or Native Hawaiians . . . .

49 C.F.R. § 26.5. As provided above, the regulations require that to show membership, an applicant must submit a statement, and then if the reviewer has a "well founded" question regarding group membership, the reviewer must ask for additional evidence. 49 C.F.R. § 26.63 (a)(1). Considering the purpose of the law, the regulations clearly explain to a person of ordinary intelligence what is required to qualify for this governmental benefit. Further, the definition of

"socially and economically disadvantaged individual" as a "citizen . . . who has been subjected to racial or ethnic prejudice or cultural bias within American society because of his or her identity as a members of groups and without regard to their individual qualities," gives further meaning to the definitions of "Black American" and "Native American" here. "Otherwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity." *Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th Cir. 2005). Plaintiffs also fail to show that these terms, when considered within the statutory framework, are so vague that they lend themselves to "arbitrary" decisions. Moreover, even if this Court did have jurisdiction to consider whether the revised definition of "Native American" was void for vagueness, a simple review of the statutory language leads to the conclusion that it is not. The revised definition of "Native Americans" now "includes persons who are enrolled members of a federally or State recognized Indian tribe, Alaska Natives, or Native Hawaiian." 49 C.F.R. § 26.5. This definition provides an objective criteria based on the decisions of the tribes, and does not leave the reviewer with any discretion. Plaintiffs' void for vagueness challenges should be dismissed.

## G. CLAIMS UNDER 42 U.S.C. §1983 AGAINST STATE DEFENDANTS

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986). To state a civil rights claim, a plaintiff

must set forth the specific factual bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations of official participation in a civil rights violations are not sufficient to support a claim under § 1983. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982).

1. Claims for Damages Against the State and Individuals in their Official Capacities

In addition to asserting that the constitutional claims should be dismissed on the merits, the State Defendants move for summary dismissal of Plaintiffs' § 1983 claims, arguing that the State and the individual state defendants acting in their official capacities should be dismissed. Dkt. 58.

To the extent that Plaintiffs assert § 1983 claims for damages against the State or the individual state defendants acting in their official capacities, the claim should be dismissed. "[A] State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). To the extent that Plaintiffs seek prospective injunctive relief, however, state officials acting in their official capacities are considered state actors under § 1983. *Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Even if the federal constitutional claims were not dismissed by this order, Plaintiffs' damages claims against the State and individual state defendants, acting in their official capacities, should be dismissed pursuant to § 1983.

2. Qualified Immunity for Individual State Defendants in their Individual Capacities

The State Defendants also move for summary dismissal of the § 1983 claims asserted against the individual state defendants, asserting that they are entitled to qualified immunity from suit. Dkt. 58.

1    Defendants in a Section 1983 action are entitled to qualified immunity from damages for

2    civil liability if their conduct does not violate clearly established statutory or constitutional rights

3    of which a reasonable person would have known.  *Pearson v. Callahan*, 129 S.Ct. 808, 815

4    (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity balances

5    two important interests: the need to hold public officials accountable when they exercise power

6    irresponsibly and the need to shield officials from harassment, distraction, and liability when

7    they perform their duties reasonably. *Harlow v. Fitzgerald*, 457 U.S. at 815. The existence of

8    qualified immunity generally turns on the objective reasonableness of the actions, without regard

9    to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable

10   governmental official could have believed his or her conduct was proper is a question of law for

11   the court and should be determined at the earliest possible point in the litigation. *Act*

12   *Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

13       In analyzing a qualified immunity defense, the Court must determine: (1) whether a

14   constitutional right would have been violated on the facts alleged, taken in the light most

15   favorable to the party asserting the injury; and (2) whether the right was clearly established when

16   viewed in the specific context of the case.  *Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001).  The

17   relevant dispositive inquiry in determining whether a right is clearly established is whether it

18   would be clear to a reasonable governmental official that their conduct was unlawful in the

19   situation they confronted. *Id*.  The plaintiff bears the burden of proving that the particular federal

20   right alleged to have been violated was clearly established at the time.  *Pearson v. Callahan,* 555

21   U.S. 223 (2009).

22       As to the first *Saucier* inquiry, above, Plaintiffs have failed to show that their federal equal

23   protection or due process rights or other statutory rights were violated.

24

As to the second *Saucier* inquiry, even if Plaintiffs had shown that their federal rights were violated by the individual state defendants here, Plaintiffs have failed to show that their rights were "clearly established" in the specific context of this case. While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (*internal quotations omitted*). Plaintiffs fail to point to any cases that demonstrate that the statutory or constitutional issues in this case were "beyond debate." Plaintiffs broadly assert that the right not to be discriminated against is "clearly established," but that is not sufficient to overcome a claim for qualified immunity. "The clearly established inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *S.B. v. Cty. of San Diego*, 15-56848, 2017 WL 1959984, at *5 (9th Cir. May 12, 2017)(*citing Mullenix,* at 308). Even if Plaintiffs had established a federal constitutional or statutory violation, the claims asserted against the individual state defendants, in their individual capacities, should be dismissed based on qualified immunity. The Court need not reach the State Defendants' additional arguments that the claims should also be dismissed because of their absolute immunity.

## H. CLAIMS FOR VIOLATIONS OF 42 U.S.C. § 2000d AGAINST THE STATE DEFENDANTS

Under 42 U.S.C. § 2000d, "[n]o person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Under 2000d-4a, a "program or activity" and "program" is defined generally as (1) an instrumentality of state or local government, including "the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to

a State or local government," (2) an educational institution, or (3) a corporation, partnership or private organization.  A private right of action exists under Section 2000d where "(1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance." *Fobbs v. Holy Cross Health Systems,* 29 F.3d 1439, 1447 (9th Cir. 2001)(*overruled on other* grounds).

Plaintiffs' claims against the State Defendants for violation of Title VI (42 U.S.C. § 2000d) should be dismissed.  Plaintiffs have failed to show that the State Defendants engaged in intentional impermissible racial discrimination.  Moreover, "Title VI must be held to proscribe only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment." *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 287 (1978); *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001).  The DBE regulations' requirement that the State make decisions based on race has already been held to pass constitutional muster in the Ninth Circuit. *Western States Paving Co. v. Washington State Department of Transportation*, 407 F.3d 983 (9th Cir. 2005).  As discussed above, Plaintiffs make no showing that the State Defendants violated their Equal Protection or other constitutional rights.  Moreover, Plaintiffs failed to show that the State Defendants intentionally acted with discriminatory animus.

Further, to the extent the Plaintiffs assert claims that are based on disparate impact, those claims are unavailable because "Title VI itself prohibits only intentional discrimination." *Jackson v. Birmingham Bd. of Educ*., 544 U.S. 167, 178 (2005).  This claim should be dismissed.

## I.  JURISDICTION ON CLAIMS FOR VIOLATIONS OF THE WASHINGTON CONSTITUTION AND WLAD AGAINST THE STATE DEFENDANTS AND ORDER TO SHOW CAUSE

Jurisdiction is a threshold issue that must be raised *sua sponte*.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998).  As is relevant here, a federal court has original

jurisdiction over cases involving federal questions, 28 U.S.C. § 1332, or where the parties are diverse citizens and the amount in controversy is over $75,000, 28 U.S.C. § 1331. A federal court may exercise supplemental jurisdiction over state law claims asserted in cases in which the court has original jurisdiction. 28 U.S.C. § 1367(a).

As above, all Plaintiffs' federal claims and the Federal Defendants should be dismissed. Only Plaintiffs' state law claims remain. Further, according to the Complaint the remaining State Defendants and Plaintiffs are all Washington state residents (Dkt. 1-1), and so are not diverse parties.

Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a state law claims if: (1) the claims raise novel or complex issues of state law, (2) the state claims substantially predominate over the claim which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the values of economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc*., 114 F.3d 999, 1001 (9th Cir. 1997)(*internal citations omitted*).

Although "it is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims" or dismiss them without prejudice, or if appropriate, remand them to state court," *Harrell v. 20th Ins. Co.,* 934 F.2d 203, 205 (9th Cir. 1991), in the interest of fairness, the Plaintiffs and State Defendants should be given an opportunity to be heard on whether the state law claims should be dismissed without prejudice. The Plaintiffs and State Defendants should be ordered to show cause, if any they have, why this Court should not decline

to exercise supplemental jurisdiction to dismiss the remaining state law claims without prejudice.

Parties' briefs, if any, should be due August 17, 2017. Parties' briefs should not exceed three

pages. Consideration of the parties' responses to the Order to Show Cause should be noted for

August 18, 2017. In the meantime, the remaining issues in motions for summary judgment

(Dkts. 48 and 58), which are based entirely on state law, should be stricken, but may be renoted

if the Court ultimately decides to exercise supplemental jurisdiction.

### J. CONCLUSION

All Plaintiffs' federal claims asserted against both the Federal and State Defendants

should be dismissed. The Plaintiffs and State Defendants should be ordered to show cause, if

any they have, why the Court should not decline to exercise supplemental jurisdiction over the

remaining state law claims.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- Plaintiffs' Motion for Partial Summary Judgment (Dkt. 48) **IS:**

    o **DENIED** as to the federal claims, and

    o **STRICKEN** as to the state law claims asserted against the State

       Defendants for violations of the Washington Constitution and WLAD;

- The Federal Defendants' Motion for Summary Judgment on Administrative

    Procedure Act, Equal Protection, and Void for Vagueness Claims (Dkt. 54) **IS**

    **GRANTED**;

    o The claims asserted against the Federal Defendants **ARE DISMISSED**;

       and

- The State Defendants' Cross Motion for Summary Judgment (Dkt. 58) **IS**

1                   ○ **GRANTED** as to Plaintiffs claims against the State Defendants for

2                      violations of the APA, Equal Protection, Void for Vagueness, 42 U.S.C. §

3                      1983, and 42 U.S.C. § 2000d, those claims **ARE DISMISSED**;

4                   ○ **STRICKEN** as to the state law claims asserted against the State

5                      Defendants for violations of the Washington Constitution and WLAD; and

6          • The Plaintiffs and State Defendants **ARE ORDERED TO SHOW CAUSE**, in

7            writing, if any they have, why his Court should not decline to exercise

8            supplemental jurisdiction over the state law claims and should not dismiss the

9            state law claims without prejudice.  Parties' briefs, if any, are due **August 17,**

10           **2017**.  Parties' briefs should not exceed three pages.  Consideration of the parties'

11           responses to the Order to Show Cause should be noted for **August 18, 2017**.

12         The Clerk is directed to send uncertified copies of this Order to all counsel of record and

13 to any party appearing *pro se* at said party's last known address.

14         Dated this 7th day of August, 2017.

15

16

17                          ROBERT J. BRYAN
                          United States District Judge

18

19

20

21

22

23

24